IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| ARCHIE BRADFORD ELLIOTT | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 10-3586M |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Archie Bradford Elliott ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c).  Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 14) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 20) and Plaintiff's Response to Motion for Summary Judgment (Paper No. 21).  No hearing is deemed necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff filed his application for DIB on June 7, 2007 alleging disability since June 30, 2006. R. at 18, 102.  His claim was denied initially and on reconsideration. R. at 61-63, 69-70. On June 17, 2009, a hearing was held before an administrative law judge ("ALJ") at which

Plaintiff and a vocational expert ("VE") testified.  R. at 28-58.  In a decision dated September 21, 2009, the ALJ denied Plaintiff's request for benefits.  R. at 18-27.  The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review.  R. at 5-9.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20 C.F.R. § 404.1520.  At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since his alleged onset date.  At step two, the ALJ determined that Claimant suffered from the following severe impairments: back disorder, obesity and depression.  At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1.  The ALJ concluded at step four that, given his Residual Functional Capacity ("RFC") Plaintiff was not capable of performing his past relevant work.  At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy.  Accordingly, she concluded that Claimant was not disabled.  R. at 18-27.

## III.  Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. §  405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*

2

*v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id*.

## IV. Discussion

Plaintiff argues that the ALJ erred in (1) evaluating his mental impairments; (2) failing to give proper weight to the opinion of the treating physician; (3) his RFC assessment; (4) his credibility assessment; and (5) failing to include all of his severe impairments at step two of the sequential evaluation.  For the reasons discussed below, the Court finds that the ALJ did not err.

### A. Mental Impairment

Plaintiff first argues that the ALJ erred in evaluating his mental impairment.  When the ALJ determines that a claimant has a medically determinable mental impairment as he did here (depression), the Regulations require the ALJ to follow a special technique to evaluate such an impairment, as described in 20 C.F.R. § 404.1520a(b)-(e), 20 C.F.R. § 404.1520a(a). Under the special technique, an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first

three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). A four -point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

In determining whether Plaintiff's depression met the criteria of listing 12.04, the ALJ considered whether the "paragraph B" criteria were satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least **two** of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. §§ 404.1520 and 416.920. A marked limitation means more than moderate but less than extreme. *Id.* Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least two weeks. *Id.*

With respect to activities of daily living, the ALJ found that Plaintiff only has a mild limitation. R. at 22.  He indicated that Plaintiff can perform basic hygiene, cook simple meals a few times a week, speak on the telephone and do a little hunting and fishing.  The ALJ did note that his wife and children do most of the household chores, yard work and take care of the dogs and chickens.  R. at 22. In support of these findings, the ALJ cites to a Third Party Function Report (R. at 146-54), Disability Report-Appeal (R. at 155-61), Function Report – Adult (R. at 165-72) and a Consultative Examination dated February 28, 2008 (R. at 257-62).  Plaintiff argues that this evidence does not support the ALJ's findings.  The Court disagrees.

4

The ALJ notes that Claimant can prepare his own meals a "few" times per week.  While Claimant's wife indicated that he may do so only "two" times per week, R. at 148, the Court finds this discrepancy insignificant.  *See also* R. At 257 (indicating Claimant does all the housecleaning and cooking "very little").  Plaintiff points to various snippets of evidence in the record which he argues contradicts the ALJ's finding that he has only a mild restriction in activities of daily living.  The overwhelming evidence is Plaintiff's own statements (and those of his wife).  The Court has reviewed that evidence and does not find that it constitutes substantial evidence to refute the ALJ's finding in this regard.  Indeed, even the evidence cited by Plaintiff (*e.g.* needing help getting out of the bathtub, no longer hunting or fishing, reminders to take medication) does not support a finding of marked restriction and Plaintiff's citation to 20 C.F.R. § 404, Subpt. P, App. 1 (12.00) (Pl.'s Mot. Summ., ECF No. 18-1 at 19) does not convince the Court otherwise.  Moreover, the ALJ found Claimant not to be entirely credible and the Court finds this finding also supported by substantial evidence.  Finally, Plaintiff also points to the Psychiatric Review Technique prepared by Dr. Payne in which he indicated he suffered from a moderate degree of limitation with regard to activities of daily living.  R. at 277. Even accepting Dr. Payne's assessment at full value, a moderate limitation in ability to perform activities of daily living would not satisfy Listing 12.04.  *See supra* 4 (noting "marked" restriction required).

Similarly, the Court does not find that the ALJ erred in finding Plaintiff suffered from only moderate restrictions with respect to his social functioning.  Plaintiff cites to various statements he and his wife made that are in the record, notations during medical examinations

made by Plaintiff's treating physician, Dr. Dimitrova, and the results of diagnostic reviews by Worcester County Department of Health indicating GAF scores that were below 50. At the outset, the Court notes that Dr. Payne found Plaintiff to have moderate not marked difficulties in maintaining social functioning. R. at 277.

The Court will first address the GAF scores which consistently indicated scores below 50. R. at 222, 228, 231, 235, 240, 245, 250, 256. The Commissioner argues that a GAF score below 50 does not have a direct correlation to the severity requirements in the mental disorder listings and that the GAF assessments cover the period from only March through November 2007. The Court agrees with both assertions. However, what the Commissioner ignores is that the ALJ failed to even mention the scores in her opinion. While the ALJ generally cited to Exhibit 4F, R. at 22, she fails to evaluate the significance of the GAF scores. Assuming for the sake of argument that the GAF scores (plus other evidence in the record) would lead to a finding of marked restriction, any error is harmless because, as discussed above and below, the Court finds that the ALJ's findings with respect to remaining functional areas are supported by substantial evidence.

With respect to the ALJ's finding that Plaintiff experienced only mild difficulties in concentration, persistence or pace, the Court finds this finding supported by substantial evidence. She relied on Dr. Harkhani's consultative examination in which he found that Plaintiff's memory was intact and that Plaintiff's concentration was "good", that he could recall the last three presidents and perform serial sevens. R. at 258. The ALJ did not ignore Plaintiff's own statements that he had some difficulty taking his medication but specifically

noted that despite his own statement, the record did not contain any "evidence to indicate problems with focus and task completion." R. at 22. Plaintiff also relies on the report of Dr. Payne who found he was only **moderately** limited in maintaining concentration, persistence and pace. R. at 277. Similar to Plaintiff's argument above, a finding of moderate limitation does not equate with marked limitation and would otherwise not alter the ALJ's findings, Indeed, Plaintiff's inference that a moderate finding may somehow lead to marked limitation is simply unfounded. Pl.'s Mot. Summ at 27.

Finally, Plaintiff argues that the ALJ erred in finding Plaintiff did not suffer from any episodes of decompensation. R. at 22. He directs the Court's attention to Dr. Payne's indication that Plaintiff experienced one or two episodes of decompensation, each of extended duration. Again, even this finding does not meet the Listing criteria requiring three episodes within 1 year, or an average of once every 4 months, each lasting for at least two weeks.

B.     Treating Physician

Plaintiff next argues that the ALJ erred by failing to give the proper weight to the opinion of Dr. Dimitrova. The treating physician rule does not always require adoption of a treating health care provider's opinion. While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. The ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96–5p. Pursuant to 20 C.F.R. §

416.927(f)(2)(ii), the ALJ is required to "explain in the decision the weight given to ... any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]."

In this case, although the ALJ did not explicitly indicate that she was rejecting Dr. Dimitrova's opinion of disabling depression, it is clear that she did. While the ALJ does not provide a significant amount of detail for her rejection, the Court finds any error is harmless and has no problem finding substantial evidence supporting that rejection. The ALJ recognized that the treatment notes from Dr. Dimitrova were sparse and that Dr. Dimitrova indicated Claimant experienced moderate improvement with medication. R. at 24, 346. Indeed, the treatment notes, as pointed out by the Commissioner, covered only an 8 month time period, R. at 220-56, and included mostly recitations of Claimant's complaints. *See, also* R. at 347-49. Significantly, the ALJ notes that Claimant's treatment was conservative and the Court disagrees with Claimant's assertion that it was not. R. at 24, *see generally* R. at 220-56 (noting Claimant's condition as generally mild or moderate and rarely severe). Indeed, the very evidence Claimant points to including various medications and support therapy is indeed conservative in nature. There is no evidence of, for example, a psychiatric hospitalization. See R. at 260 (indicating therapy at Worcester County Health Clinic but never hospitalized and no other psychiatric treatment). Moreover, the opinion of Dr. Harkhani also contradicts Dr. Dimitrova's assertion of depression as disabling. Dr. Harkhani observed Claimant as calm and cooperative although anxious mood. He indicated his speech was low-toned but clear, coherent and relevant, that there was no thought disorder, a denial of hallucinations, delusions or

paranoia, suicidal or homicidal though, plan or intention.  He indicated good insight and judgment, no psychomotor disturbances and that he was alert and oriented x3.  R. at 261.  Dr. Harkhani found Claimant to suffer from major depression recurrent but did not find that he met the criteria for hypomania and that there was no evidence of psychosis, manor or obsessive compulsive disorder.  *Id*.  It is significant to note that the ALJ indeed accounted for Claimant's mental health issues in his RFC.  Specifically, she precluded Claimant from interaction with the general public and noted that he was limited in other ways "due to psychological problems."   In sum, the ALJ's decision to disregard Dr. Dimitrova opinion was not improper.

      C.     <u>RFC Finding</u>

Plaintiff next argues that the ALJ erred in her RFC finding.  Specifically, he argues that there is no support for the ALJ's finding that he can perform "basic work activities." He argues that the ALJ's finding in this regard is inconsistent with her recognition that Claimant suffered from a lower back disorder, depression, obesity and sleep apnea.  The Court does not find an inconsistency given the ALJ's citation to the other evidence in the record.  For example, she recognized that an MRI revealed "low to moderate stenosis and L3-4 and L4-5 and small disc herniation at Lf-S1.  R. at 24, 204-05**.**  The ALJ also relied on neurosurgeon, Dr. Greco's examination of Claimant who found he had a mild antalgic gait and that his range of movement was moderate in all planes.  R. at 24, 206-12.  The ALJ also relied upon Dr. Greco's findings that Claimant had normal muscle strength and tone, straight leg raise was negative in supine and seated positions, and his reflexes were symmetric and physiologic.  *Id*.  This evidence was also corroborated by other evidence in the record as noted by the ALJ.  R. at 24 (citing examination

9

of Dr. Spinozza indicating mild suggestion of scoliosis, mild decrease in range of motion in the hips but with no motory or sensory deficits). Contrary to Plaintiff's assertion, this is precisely the type of evidence that supports the ALJ's RFC finding.

    D.    <u>Credibility Finding</u>

Plaintiff next asserts that the ALJ erred in her credibility finding. She found that although his medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC. R. at 24. The Court has reviewed the ALJ's opinion and finds that the ALJ's finding that Claimant's statements regarding his symptoms were not supported by the objective evidence in the record.

    E.    <u>Sleep Apnea</u>

Plaintiff's final argument is that the ALJ failed to include all of his severe impairments at step two of the sequential evaluation. Specifically, he argues that his sleep apnea qualified as a severe impairment. The ALJ found that there was no evidence to indicate that his sleep apnea required any significant medical treatment and did not result in any continuous exertional or nonexertional functional limitations. R. at 21. An impairment is "not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." S.S.R. 85-28. The ALJ did acknowledge that Claimant, in fact, had sleep apnea. *See also* R. at 308. However, Plaintiff does not demonstrate how this condition impacted his basic work activities. The ALJ did not err.

V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: August 21, 2012  _____/s/_____
THOMAS M. DIGIROLAMO
United States Magistrate Judge

Copies to:
Frederick A. Raab, LLP
Mignini & Raab
606 Baltimore Ave.


Allen F. Loucks
Assistant United States Attorney
United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692